**PHELPS MEMORIAL HOSPITAL CENTER, Plaintiff–Appellant,**

v.

**Tommy G. THOMPSON, Empire Blue Cross Blue Shield, Defendants–Appellees.**

No. 04–3109.

United States Court of Appeals, Second Circuit.

April 26, 2005.

Roy W. Breitenbach, Garfunkel, Wild & Travis, P.C., Great Neck, NY, for Plaintiff–Appellant.

Andrew D. O'Toole, Assistant United States Attorney, Southern District of New York (Sara L. Shudofsky, Assistant United States Attorney, David N. Kelley, United States Attorney, on the brief), New York, NY, for Defendant–Appellee Tommy G. Thompson, of counsel.

Present: OAKES, STRAUB, Circuit Judges, and HOLWELL, District Judge.*

### SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is hereby **AFFIRMED**.

---

* The Hon. Richard J. Holwell, United States District Judge, Southern District of New York, sitting by designation.

Plaintiff–Appellant Phelps Memorial Hospital Center ("Phelps") appeals from a May 4, 2004, judgment of the United States District Court for the Southern District of New York (Charles J. Brieant, *Judge*) granting a motion for judgment on the pleadings brought by defendant Tommy G. Thompson, Secretary for Health and Human Services (the "Secretary"), and denying Phelps's cross-motion for judgment on the pleadings. The facts underlying that judgment are set forth in the District Court's unpublished April 29, 2004, Memorandum and Order. We assume familiarity with that decision.

Phelps is a New York not-for-profit corporation which provides a variety of healthcare services at its facilities located in Sleepy Hollow, New York. Among these are rehabilitation services. Phelps was first certified to be reimbursed by Medicare for provision of rehabilitation services to qualified patients by the Secretary, via the Health Care Financing Administration (the "HCFA"),[1] in 1986. From that time, and through the 1993, 1994, and 1995 fiscal years, rehabilitation services, provided by those who, like Phelps, treated qualified patients in a distinct Medicare-certified and State-licensed rehabilitation unit, were exempt from billing rate limitations imposed by Medicare's prospective payment system ("PPS"). When it was first certified by Medicare to provide rehabilitation services Phelps's dedicated unit contained only four beds. In 1992, with the knowledge and verbal approval of the New York State Department of Health's Division of Health and Facility Planning ("NYS-DOH"), Phelps began using beds previously allotted to its medical surgery unit to provide additional rehabilitation services to Medicare-qualified patients. In the years

---

1. The HCFA has since been replaced by the Centers for Medicare and Medicaid Services.

following Phelps applied for and, in December 1994, was granted an extension of its NYSDOH license allowing Phelps to expand its dedicated rehabilitation unit by constructing additional physical facilities and by permanently converting to dedicated rehabilitation services eleven beds previously reserved to medical surgery services.

At any given time during the 1993, 1994, and 1995 fiscal years Phelps, first with explicit NYSDOH approval and then under NYSDOH license, treated as many as fifteen Medicare-qualified rehabilitation patients in its expanded unit. Despite the fact that during this same period Phelps's Medicare certification for the unit was for four beds only, Phelps sought and received payments from Empire Blue Cross Blue Shield ("Empire"), a fiscal intermediary for Medicare billing and services, on a PPS-exempt basis for all Medicare-qualified patients treated in its unit, including patients who occupied the original four beds and those who occupied the added beds.

In 1996 and 1997 Empire conducted an audit of payments made to Phelps for services provided in 1993, 1994, and 1995. Empire concluded that because Phelps had failed to notify HCFA of and attain Medicare certification for its expanded rehabilitation unit, only four of the unit's beds could be exempted from PPS billing limits during periods prior to 1996, when Phelps's Medicare certification for the unit was expanded to cover fifteen beds.

In accordance with 42 U.S.C. § 1395oo(a), Phelps appealed Empire's reimbursement determination to the Provider Reimbursement Review Board ("PRRB"). The PRRB upheld Empire's determination in August 2003. Phelps then appealed to the District Court pursuant to 42 U.S.C. § 1395oo(f). By its April 29, 2004, Memorandum and Opinion the District Court found no basis to overturn the PRRB's determination. Phelps then filed a timely appeal in this Court. We assert jurisdiction under 28 U.S.C. § 1291 and affirm.

Our task here is the same as that presented to the District Court: to determine whether the PRRB's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See Thomas Jefferson University v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); 42 U.S.C. § 1395oo(f); 5 U.S.C. § 706(2)(A). This is an exacting standard and our deference to the Secretary's decisions is greater still in light of the fact that Medicare certification and compensation is a difficult and complex area of administrative law and practice that " 'require[s] significant expertise and entail[s] the exercise of judgment grounded in policy concerns.' " *Id.* (quoting *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 697, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991)).

Mindful of this limiting standard of review we agree with the District Court that, on the record before us, the PRRB panel did not act arbitrarily, capriciously, abuse its discretion, or otherwise fail to act in accordance with the law by denying Phelps's appeal from the decision of Empire. In particular, we agree with the District Court that the PRRB did not err in finding that the statutory provisions, C.F.R. sections, administrative practice manuals, and agency letters in force during the 1993–1995 billing cycles required of Phelps that it have both a New York State license and Medicare certification for its expanded stable of rehabilitation beds in order to have patients filling those beds exempted from PPS billing limits. We also agree that the PRRB did not act arbitrarily by holding Phelps ultimately responsible for ensuring that Medicare

was properly notified of the expansion. Finally, we see no clear error in the PRRB's determination that Phelps failed to meet these responsibilities and therefore find no ground to overturn its denial of Phelps's appeal.

We have reviewed each of Appellant's remaining arguments on this appeal and find each of them to be without merit. For the foregoing reasons the judgment of the District Court is **AFFIRMED.**